DETROIT ELECTRIC LIGHT & POWER CO. *v.* APPLEBAUM.

1. EVIDENCE—ADMISSIONS AND EXPLANATIONS.
   A party relying upon the admissions of the opposite party to prove a material fact is not concluded by the explanations and statements made at the same time as the admissions.

2. INSTRUCTIONS—HONEST OR DISHONEST TRANSACTIONS.
   A charge that, where a transaction admits of "either" an honest or a dishonest construction, it is the duty of the jury to accept the former, is erroneous.

3. RECEIVERS—RIGHT TO SUE.
   A receiver who has not rendered his final account or been discharged, whose bond is in force, and who has been authorized by the court to do so, may sue to recover assets of the estate, though previous to the suit the estate had been sold to him in a trust capacity.

Error to Wayne; Rohnert, J. Submitted December 2, 1902. (Docket No. 129.) Decided March 30, 1903.

Trover by the Detroit Electric Light & Power Company, Hoyt Post, receiver, against Isaac Applebaum and Alexander C. Cohen, copartners as I. Applebaum & Co. From a judgment for defendants, plaintiff brings error. Reversed.

*Wilkinson, Post & Oxtoby* and *Walter E. Oxtoby*, for appellant.

*Adolph Sloman*, for appellee Applebaum.

*Alex. J. Groesbeck*, for appellee Cohen.

MOORE, J. This is an action brought by the Detroit Electric Light & Power Company, under the receivership of Hoyt Post, against the defendants, for the value of 7,728 pounds of copper wire alleged to have been stolen from plaintiff by certain of its employés, and by them sold to the defendants. The defendants obtained judgment. The case is brought here by writ of error.

The record shows the plaintiff company became embarrassed, and Mr. Williams was appointed receiver in May, 1899. The transactions out of which this suit springs occurred in April and May, 1900. At this time Mr. Williams was receiver, Daniel A. Casey was manager, and Robert A. Tress was line foreman of the company. The defendants were copartners in business under the firm name of I. Applebaum & Co. Isaac Applebaum carried on individually a separate scrap-iron business. The offices and yards of the two concerns were together, and adjoined the Detroit Electric Light & Power Company. One of their yards was on Woodbridge street, adjoining the power plant of the company, and their office and other yard was on Randolph street, separated from the power plant by a building occupied by a foundry. In April and May defendants purchased from Tress 7,728 pounds of old copper wire, for which this suit is brought. It was the claim of plaintiff that Tress and Casey were acting in collusion; that the wire belonged to the plaintiff, and was sold by Tress, individually and without authority, to the defendants; that having bought from Tress individually, who had no title, the defendants received no title, and were liable in trover. The defendants' theory was that they bought in good faith from the Detroit Electric Light & Power Company, through Casey,

as manager, and Tress, as line foreman; that, knowing of no secret limitations on their apparent authority, they had a right to rely in good faith upon such apparent authority; that, having done so, they did not become liable, even if in fact Tress and Casey exceeded their authority in selling, and embezzled the proceeds of such sales. The record contained testimony tending to support both theories.

The first error demanding attention is the refusal of the court to submit to the jury plaintiff's theory of the case, to wit, sales by Tress of wire as his own property, without reference to plaintiff's ownership, on the ground that, the plaintiff's ownership of the property being shown by defendants' admissions, plaintiff must take all of such admissions or none. The court refused to submit to the jury the question whether the defendants bought the wire from Tress as his own property, and without reference to the ownership of the plaintiff company, in which case they acquired no title to it; Tress having none himself. The court did this on the ground that, as plaintiff proved the receipt of its property by defendants from their own admissions, plaintiff must take both the admissions and the explanation, and could not take the admission and contradict and do away with the explanation.

There was testimony tending to sustain plaintiff's contention that defendants actually knew that the wire belonged to the plaintiff, and yet undertook to buy it of Robert A. Tress individually, and that as an afterthought they took the ground that they bought from the plaintiff, —such as the statements made by the defendants in police court, and the entries of the transaction which appeared upon the books of defendants, at least some of which were changed. The plaintiff could avail itself of the admissions made by the defendants that the property bought of Tress was its property without being bound to accept all of the defendants' statements as to what they supposed about the ownership of the property. The jury might believe that part of the admission which charged the defendants, and disbelieve that part which made a defense,

if the latter was improbable and discredited by the other testimony. See *Liesemer* v. *Burg*, 106 Mich. 124 (63 N. W. 999); *Parret* v. *Craig*, 56 N. J. Eq. 280 (38 Atl. 305); *Craig* v. *Parret*, 56 N. J. Eq. 848 (42 Atl. 1117); *Delamater* v. *Pierce*, 3 Denio, 315; *Roberts* v. *Gee*, 15 Barb. 449. In *Schmidt* v. *Pfau*, 114 Ill. 494 (2 N. E. 522), the court says:

"The answer of appellant to this is to the effect that, if his testimony is looked to for the purpose of proving any particular fact, it must be accepted as a whole, and for all purposes. This view of the law is clearly unsound, and finds no support from English or American authority. It is a familiar principle of the law of evidence as it obtains in this country and in England that the statements of a party, made against his own interest, may be accepted and acted upon by the jury as true, while others made in his favor, though at the same time and as part of the same conversation, may be rejected as unworthy of belief. In such case all that the witness has said relating to the particular matter in question goes to the jury for their consideration, but, when considered, they may believe such parts of the statement as seem reasonable and probable, and reject the balance. 2 Best, Ev. § 520."

Complaint is made of the following part of the charge:

"The law presumes that parties, in their dealings, intend to conduct them honestly; and, where a transaction which is challenged will admit either of an honest or a dishonest construction, it is the duty of the jury to accept the former,—that is, to accept the honest construction."

Counsel for appellees suggest that a typographical error crept in, and the word "either" was used when it was intended to use the word "equally." If the word "equally" had been used, the charge would not have been objectionable; but unfortunately it was not used, and by the charge a burden was put upon the plaintiff which does not exist even in cases of fraud. See *Watkins* v. *Wallace*, 19 Mich. 57; *Sweeney* v. *Devens*, 72 Mich. 301 (40 N. W. 454); *Kipp* v. *Lamoreaux*, 81 Mich. 299 (45 N. W. 1002); *Morley* v. *Insurance Co.*,

85 Mich. 210 (48 N. W. 502); *Knop* v. *Insurance Co.*, 107 Mich. 323 (65 N. W. 228).

The other assignments of error which have been urged have been considered, but, as the questions involved are not likely to arise again, we do not deem it necessary to say any more about them.

On the part of the appellees it is claimed that as the property, including choses in action, of the Detroit Electric Light & Power Company, had been sold, before this suit was brought, by virtue of a decree entered in the foreclosure case, to Hoyt Post, trustee, and a deed made to him by the special master commissioner, Hoyt Post, as receiver, cannot maintain this action, and the verdict and judgment ought to stand. The sale was made to Hoyt Post, as trustee, June 29, 1900, and the master's report of the sale was filed June 30th. August 1, 1900, Mr. Williams resigned as receiver, and on the same day the court accepted his resignation, and appointed Hoyt Post receiver, and authorized said receiver to institute and prosecute all such suits as, in his judgment, were necessary. The deed from the special master to Hoyt Post, trustee, was made September 18, 1900. The record also shows that on the petition of Hoyt Post, receiver, the court having charge of the foreclosure proceeding made an order October 6, 1900, authorizing suit to be brought against Isaac Applebaum and Alexander C. Cohen, under the name and title of "Detroit Electric Light & Power Company, Hoyt Post, Receiver," for the recovery of the value of the copper wire received by them from employés of Nathan G. Williams, receiver. The record further shows he is still receiver, that he has not been discharged or rendered his account, and that his bond as such receiver is in full force. With the record in this condition, we have no doubt of his right to prosecute this suit.

Judgment is reversed, and new trial ordered.

The other Justices concurred.